UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

CORRECTED COPY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DISABILITY ADVOCATES, INC.,

                 Plaintiff-Appellee,

          - against -

DAVID A. PATERSON, in his official
capacity as Governor of the State of
New York, RICHARD F. DAINES, in
his official capacity as Commissioner of
the New York State Department of
Health, MICHAEL F. HOGAN, in his
official capacity as Commissioner of the
New York State Office of Mental
Health, THE NEW YORK STATE
DEPARTMENT OF HEALTH, AND
THE NEW YORK STATE OFFICE OF
MENTAL HEALTH,

                 Defendants-
                 Appellants.

Lead Docket No. 10-235
Docket Nos. 10-251, 10-767,
10-1190

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**BRIEF OF <u>AMICI</u> <u>CURIAE</u> NATIONAL AND NEW YORK MENTAL HEALTH PROFESSIONALS, ADVOCACY, FAMILY AND CONSUMER ORGANIZATIONS IN SUPPORT OF PLAINTIFF-APPELLEE DISABILITY ADVOCATES, INC.'S OPPOSITION TO DEFENDANTS-APPELLANTS' MOTION FOR A STAY PENDING APPEAL**

DAVIS POLK AND WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
(212) 450-4000
Attorneys for *Amici Curiae*

**Statement Pursuant to Rule 26.1 of the**
**Federal Rules of Appellate Procedure**

Amici Curiae The American Association of People with Disabilities,
AARP, American Network of Community Options and Resources, The
Center for Disability Rights, Inc., The Coalition of Institutionalized Aged
and Disabled, Community Access, The Geriatric Mental Health Alliance of
New York, Mental Health America, The Mental Health Association in New
York State, Inc., The Mental Health Association of New York City, The
National Alliance on Mental Illness, The National Alliance on Mental Illness
of New York City, Inc., The National Council on Community Behavioral
Health Care, National Mental Health Consumers' Self-Help Clearinghouse,
The New York Association of Psychiatric Rehabilitation Services, The New
York Association on Independent Living, The Schuyler Center for Analysis
and Advocacy, and Venture House are non-profit corporations and
associations. They respectively have no parent corporations and are not
owned, in whole or part, by any publicly held corporations.

i

# **TABLE OF CONTENTS**

PAGE

TABLE OF AUTHORITIES ........................................................................iii

INTERESTS OF THE AMICI CURIAE .......................................................1

ARGUMENT:  THE MOTION FOR A STAY SHOULD BE DENIED.......2

I.  The Status Quo Has Caused and Continues to Cause Irreparable Harm to People with Mental Illness in Adult Homes..........................3

II.  Supported Housing Already Exists and Has Proven Successful for People with Mental Illness................................................................5

III.  The Trial Court's Remedial Plan Calls for Individualized Assessments and an Orderly Step-by-Step Process to Achieve Its Goals ................................................................................................7

CONCLUSION ...........................................................................................9

# TABLE OF AUTHORITIES

PAGE

## Cases

Disability Advocates, Inc. v. Paterson, 598 F. Supp. 2d 289 (E.D.N.Y. 2009) ...................................................................................... 2

Disability Advocates, Inc. v. Paterson, 653 F. Supp. 2d 184 (E.D.N.Y. 2009) .......................................................................... 3, 4, 6, 7

Disability Advocates, Inc. v. Paterson, No. 03-cv-03209, Doc. 405 (E.D.N.Y. Mar. 1, 2010) ................................................................ 8, 9

Olmstead v. L.C., 527 U.S. 581 (1999)......................................................... 2

## Other Authorities

Clifford J. Levy and Sarah Kershaw, Broken Home, N.Y. Times, Apr. 18, 2001, at A2 ................................................................................. 3

Priscilla Ridgway and Anthony M. Zipple, The Paradigm Shift in Residential Services:  From the Linear Continuum to Supported Housing Approaches, 13 Psychosoc. Rehabilitation J. 11 (1990) ............ 5

Schuyler Center for Analysis and Advocacy, Action Plan for Dignity, Respect, Choice and Recovery for People Living in Adult Homes (Feb. 2007), available at www.scaany.org/initiatives/documents/adulthome_actionplan_200 7.pdf ..................................................................................................... 4

Carole E. Siegel et al., Tenant Outcomes in Supported Housing and Community Residences in New York City, 57 Psychiatric Servs. 982 (2006) .............................................................................................. 5

Debra Srebnick et al., Housing Choice and Community Success for Individuals with Serious and Persistent Mental Illness, 31 Cmty. Mental Health J. 139 (1995) ................................................................ 5

PAGE

Sam Tsemberis et al., Housing First, Consumer Choice, and Harm
   Reduction for Homeless Individuals with a Dual Diagnosis, 94
   Am. J. of Pub. Health 651 (2004) ...........................................................5

# INTERESTS OF THE AMICI CURIAE

The <u>Amici</u>, further described in Appendix A, submit this brief in support of Plaintiff-Appellee Disability Advocates, Inc.'s ("DAI's") opposition to the motion for a stay filed by Defendants-Appellants ("Defendants" or "the State"). The <u>Amici</u> organizations include hundreds of mental health professionals, mental health service providers, and individuals with mental illness and their family members, as well as individuals and organizations concerned about access to long-term care services. The <u>Amici</u> are intimately familiar with the needs of and public services for people with mental illness. They are uniquely positioned to speak to the issue of whether the Judgment and the Remedial Order should be stayed.

<u>Amici</u> urge that the implementation of relief in this case not be delayed. During six years of litigation, DAI's constituents have continued to suffer irreparable harm. There is no justification to delay the District Court's remedial plan to correct this injustice. That plan imposes nothing novel, experimental, or radical. It will be implemented gradually, over a period of four years, based upon individual client assessments undertaken by experienced service providers. It requires the State to provide a well established form of supported housing, available to other individuals,

including persons with mental illness, which the State has systematically denied to Adult Home residents with mental illness.

If the Judgment and the Remedial Order are stayed, Adult Home residents will continue to be denied access to supported housing. The Remedial Order establishes a reasonable timetable that considers both the needs of current Adult Home residents and the services and resources available to meet those needs. For these reasons and the additional reasons set forth below, Amici strongly support DAI in opposing the State's motion.

## ARGUMENT: THE MOTION FOR A STAY SHOULD BE DENIED

In Olmstead v. L.C., 527 U.S. 581 (1999), the United States Supreme Court held that a state violates the Americans with Disabilities Act when it needlessly institutionalizes people with disabilities. In this case, the District Court found, after a lengthy trial, that New York is institutionalizing thousands of individuals with mental illness in large, for-profit Adult Homes when these same individuals could be successfully served in community settings. Disability Advocates, Inc. v. Paterson, 598 F. Supp. 2d 289 (E.D.N.Y. 2009). Although New York State is known and holds itself out as a leader in de-institutionalization (see Defendants' Mem. of Law in Support of a Stay Pending Appeal ("Mot.") at 3), the State has discriminated against

Adult Home residents by failing to offer them community-based housing and services, and has no plan in place to remedy its violation of law.

## I. The Status Quo Has Caused and Continues to Cause Irreparable Harm to People with Mental Illness in Adult Homes

Each day of delay in the State's implementation of the Remedial Order inflicts irreparable harm on Adult Home residents with mental illness. People who would choose and who are entitled and able to live in integrated community-based permanent housing remain in what one expert has described as "institutional living at, potentially, its worst." Disability Advocates, Inc. v. Paterson, 653 F. Supp. 2d 184, 203 (E.D.N.Y. 2009) ("DAI").

New York State has long publicly acknowledged that Adult Homes "do[] not provide adequate care and quality services to residents with psychiatric disabilities" (Trial Exhibit ("Tr. Ex.") S-103 at i), and has recognized that Adult Home residents are "stuck" in these institutional settings (Tr. Ex. P-284 at 1), where "learned helplessness" is the norm, DAI, 653 F. Supp. 2d at 214.[1]  According to Linda Rosenberg, a former Senior

---

[1] Even after reforms addressed some of the documented horrors of adult homes, see, e.g., Clifford J. Levy and Sarah Kershaw, Broken Home, N.Y. Times, Apr. 18, 2001, at A2, they continue to be places where residents receive little or no support in obtaining skills, employment, or the ability to manage their illnesses.  Schuyler Center for Analysis and Advocacy, Action

Deputy Commissioner of Defendant New York State Office of Mental Health ("OMH"), it became "increasingly clear" during her tenure with OMH (from 1974 to 2004) that "[Adult Homes] were neither desirable, nor would they really promote people's recovery and integration and full social inclusion." Id. at 197. Adult Homes "do not represent current practice in the mental health field." Id. at 203. To the contrary, the large, congregate setting; lack of privacy and choice; and high degree of regimentation and control over virtually every aspect of residents' daily activities "restrict and constrain people's freedom and their ability to learn and exercise skills." Id.

The State's contention (Mot. at 3) that Adult Home residents "are free to leave . . . or relocate at any time" is, as a practical matter, untrue. Indeed, the State's priorities for allocating supported housing have made this impossible. See DAI, 653 F. Supp. 2d at 273-75. Not only is there nowhere for Adult Home residents to go (as the State elsewhere admits, see Tr. Ex. P-284 at 1), but the lack of education about their options, and the lack of assistance in re-locating, keep Adult Home residents "stuck" where they are.

---

Plan for Dignity, Respect, Choice and Recovery for People Living in Adult Homes (Feb. 2007), available at www.scaany.org/initiatives/documents/adulthome_actionplan_2007.pdf.

## II. Supported Housing Already Exists and Has Proven Successful for People with Mental Illness

In contrast to Adult Homes, supported housing in the community has long been recognized as a highly successful program. OMH has recognized the need to expand access to supported housing. (See Tr. Ex. P-284.) In 2002, a New York State Task Force, endorsed by the Commissioner of Defendant New York State Department of Health, recommended the creation of 6,000 supported housing slots for Adult Home residents state-wide. (See Tr. Ex. S-103.)

Supported housing provides affordable, independent housing and support services based on the needs and desires of the resident.[2] These services include developing (or redeveloping) activities of daily living, such as cooking, cleaning, and laundry; medication and symptom management;

---

[2] A large body of academic and professional literature demonstrates that people with mental illness thrive and acquire life skills in supported housing's real-world environment. See, e.g., Carole E. Siegel et al., Tenant Outcomes in Supported Housing and Community Residences in New York City, 57 Psychiatric Servs. 982 (2006); Sam Tsemberis et al., Housing First, Consumer Choice, and Harm Reduction for Homeless Individuals with a Dual Diagnosis, 94 Am. J. of Pub. Health 651 (2004); Debra Srebnick et al., Housing Choice and Community Success for Individuals with Serious and Persistent Mental Illness, 31 Cmty. Mental Health J. 139 (1995); Priscilla Ridgway and Anthony M. Zipple, The Paradigm Shift in Residential Services: From the Linear Continuum to Supported Housing Approaches, 13 Psychosoc. Rehabilitation J. 11 (1990).

budgeting and socialization; substance abuse treatment; job training; and
negotiating with landlords. For residents with the most pressing mental
health needs, Assertive Community Treatment ("ACT") programs offer
multi-disciplinary teams, which include psychiatrists, nurses, psychologists,
and social workers.

During the last decade, OMH added 13,557 supported housing beds,
and Defendants have already allocated funds to develop 1,763 additional
supported housing beds. DAI, 653 F. Supp. 2d at 273. Until 2005, however,
Defendants excluded Adult Home residents from the target populations for
supported housing beds. In 2005, Defendants formally added Adult Home
residents to the "target populations" for new supported housing that OMH
was in the process of developing. But apart from a one-time set-aside of 60
supported housing beds – imposed on OMH by the New York State
Legislature – Adult Home residents continue to be denied access to
supported housing; only about 30 Adult Home residents have moved to
supported housing over the last decade, an average of three individuals per
year. As the District Court found, "without a specific allocation of beds for
Adult Home residents, Adult Home residents will not have access to
supported housing as a practical matter." DAI, 653 F. Supp. 2d at 275.

Virtually all Adult Home residents with mental illness can be successful in supported housing. Plaintiff's expert Dr. Kenneth Duckworth – who has served as Medical Director for Harvard Medical School's principal psychiatry agency and for the Massachusetts Department of Mental Health, and has supervised a variety of treatment settings for over twenty years – confirmed that there are no material clinical differences between Adult Home residents and supported housing residents. In New York City, numerous ACT teams offer seven-day-a-week, round-the-clock services to clients in supported housing who have severe and persistent mental illness, often combined with physical disabilities or substance abuse. As one experienced ACT team provider testified, "you can put someone with severe mental illness in supported housing and it doesn't matter the degree of severity of illness as long as you match the supports to what they need." (Trial Transcript dated May 12, 2009, at 266.)

## III. The Trial Court's Remedial Plan Calls for Individualized Assessments and an Orderly Step-by-Step Process to Achieve Its Goals

In its motion, the State contends that implementing the Remedial Order would "serious[ly] disrupt[ ] ... defendants and adult-home residents" in the event of a successful appeal. (Mot. at 6.) This is simply

7

untrue. The carefully constructed timetable set out in the District Court's Remedial Order contemplates a gradual and logical progression of steps. These include the development of appropriate RFPs, contracts with service providers, and in-reach and assessment of Adult Home residents by service providers to ensure – for those who choose it – the orderly transition from Adult Home to supported housing. Disability Advocates, Inc. v. Paterson, No. 03-cv-03209, Doc. 405 (E.D.N.Y. Mar. 1, 2010), at 5-10.

The Remedial Order specifies the need to offer information and provide assistance to Adult Home residents – what the Court refers to as "frequent effective in-reach." Id. at 6. This process will help service providers accurately determine eligibility and enable them to gauge whether and how they will meet the individual needs of Adult Home residents who wish to move to supported housing. Adult Home residents will be given tools to understand their options, make informed decisions, and succeed in the transition to community based housing. Id. at 5-6, 8, 10. The Amici strongly support the Remedial Order's careful and logical approach.

## CONCLUSION

For the reasons set forth above, the Amici respectfully request that the

State's motion for a stay be denied and that the District Court's Remedial

Order be implemented without delay.

Dated:  New York, New York
       April 13, 2010

<div style="margin-left:40%">

Respectfully submitted,

DAVIS POLK & WARDWELL LLP

By: _Nancy B. Ludmerer_
      Nancy B. Ludmerer

</div>

Of Counsel:

Sharon Katz
Joanna Cohn Weiss
Justin Sommers
Nicole Vanatko

<div style="margin-left:40%">

450 Lexington Avenue
New York, New York  10017
(212) 450-4000

*Attorneys for Amici Curiae Mental Health
Professionals, Advocacy, Family and
Consumer Organizations*

(List Attached as Appendix A)

</div>

### Appendix A: The Amici Curiae

- **The American Association of People with Disabilities**, with over 100,000 members, is the largest national nonprofit cross-disability member organization, dedicated to ensuring political empowerment and economic self-sufficiency for the more than 50 million Americans with disabilities.

- **AARP** is a nonpartisan, nonprofit membership organization dedicated to representing the needs and interests of people 50 and older. AARP supports access to quality long-term care services in the setting of choice and access to a range of financing sources for needed long-term care services. To that end, AARP supports efforts to ensure that individuals have access to long-term care services in their own homes.

- **American Network of Community Options and Resources** is a national advocacy organization that informs, educates and networks service providers to safeguard, develop, grow and extend their capacity to support the choices of people with disabilities.

- **The Center for Disability Rights, Inc.** is a community-based advocacy and service organization for people with all types of disabilities.

- **The Coalition of Institutionalized Aged and Disabled** (CIAD) provides residents in adult homes with the information and skills

they need to advocate for themselves and protect their rights. CIAD was born out of a sense of disenfranchisement and isolation among residents of adult homes and nursing homes, and its leadership includes adult home residents and former residents. CIAD regularly visits adult homes and adult home residents in New York City.

• **Community Access** provides a wide variety of services to more than 1,600 individuals with psychiatric disabilities each year, including job training, employment placement and other support services. Additionally, Community Access owns, leases and operates more than 800 units of permanent and transitional supportive housing for individuals with mental illness in New York City.

• **The Geriatric Mental Health Alliance of New York** advocates for changes in mental health practice and policy toward elder adults with mental health issues.

• **Mental Health America** (MHA), formerly the National Mental Health Association, is a national membership organization consisting of individuals with mental illnesses and their family members. The nation's oldest and largest nonprofit mental health organization, MHA has over 320 affiliates who are dedicated to improving the mental health of all Americans,

especially the 54 million people who have severe mental disorders. Through advocacy, education, research, and service, MHA helps to ensure that people with mental illness are accorded respect, dignity, and the opportunity to achieve their full potential.

- **The Mental Health Association in New York State, Inc.** (MHANYS) and its local affiliates serve 54 counties in New York, working to ensure that New Yorkers have access to mental health services. MHANYS members include mental health consumers, family members, advocates, and professionals.

- **The Mental Health Association of New York City** manages supported housing programs in Manhattan and the Bronx, among other services for people with mental illnesses.

- **The National Alliance on Mental Illness** (NAMI) is the nation's largest grassroots mental health organization dedicated to improving the lives of individuals and families affected by mental illness. Founded in 1979, NAMI has over 1,100 state and local affiliates that engage in research, education, support and advocacy. A vital part of NAMI's mission is to promote and advocate for access to treatment and services, including supportive housing, that foster recovery and enable individuals

living with mental illnesses to achieve the highest possible level of functional independence and productivity in the community.

• **The National Alliance on Mental Illness of New York City, Inc.** (NAMI-NYC) provides support, education, and advocacy for families and individuals with mental illness. NAMI-NYC's members include mental health consumers, family members, advocates and mental health professionals.

• **The National Council on Community Behavioral Health Care**, with its 1,700 member organizations, is the unifying voice of America's behavioral health organizations, and is committed to advocating for and providing comprehensive, quality care to the more than 6 million adults and children who have mental illness or addiction disorders.

• **National Mental Health Consumers' Self-Help Clearinghouse** is a national technical assistance center run by and for people who are consumers of mental health services and survivors of psychiatric illness. Its mission is to promote consumer/survivor participation in planning, providing and evaluating mental health and community support services, to provide technical assistance and information

to consumers/survivors interested in developing self-help services, and advocating to make traditional services more consumer/survivor-oriented.

•   **The New York Association of Psychiatric Rehabilitation Services** (NYAPRS) is a statewide coalition of organizations and people who use or provide recovery-oriented community-based services. NYAPRS' membership includes over 100 mental health service agencies that provide a wide range of services, including supported housing, to tens of thousands of New Yorkers.

•   **The New York Association on Independent Living** represents New York's Independent Living Centers, which provide a variety of services for people with disabilities, including peer counseling, advocacy, independent living skills training and assistance with housing, education, employment, medical needs and personal attendant services.

•   **The Schuyler Center for Analysis and Advocacy**, a statewide policy analysis and advocacy organization that addresses state mental health issues, published an action plan for addressing problems relating to adult homes in 2007.

•   **Venture House** operates a supported housing program that provides subsidized scattered site apartments in Queens, and provides over

5

900 adults with mental illness in New York City access to meaningful work,

medical care and education.